UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HOUSING ENTERPRISE INSURANCE COMPANY INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:17-CV-241-JRG-HBG |
| ONE SOUTH PLACE, LP; SOUTH RIDGE HOUSING, LLC; EMERALD HOUSING MANAGEMENT, LLC; BERKADIA COMMERCIAL MORTGAGE, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| ONE SOUTH PLACE, LP and EMERALD HOUSING MANAGEMENT, LLC, | ) ) ) | |
| Counter-Plaintiffs, | ) ) | |
| v. | ) ) | |
| HOUSING ENTERPRISE INSURANCE COMPANY, INC., | ) ) ) | |
| Counter-Defendant. | ) ) | |
| ONE SOUTH PLACE, LP and EMERALD HOUSING MANAGEMENT, LLC, | ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| WELLS FARGO INSURANCE SERVICES USA, INC., | ) ) ) ) | |
| Third-Party Defendant. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court are the following Motions: Housing Enterprise Insurance Company's Motion to Exclude Robert Underdown [Doc. 75], Wells Fargo's Motion to Exclude Robert Underdown [Doc. 78], and Emerald Housing Management, LLC, and One South Place, LP's Motion in Limine to Exclude Billy Akin [Doc. 80].

The Court addressed the Motions at a hearing on October 23, 2018. Attorney Alan Lyons appeared on behalf of Housing Enterprise Insurance Company. Attorney Robert Vance appeared on behalf of One South Place, LP, and Emerald Housing Management, LLC. Attorneys Bradford Payton and Thomas Potter, III, appeared on behalf of Wells Fargo Insurance Services USA, Inc. Accordingly, for the reasons further explained below, the Court **GRANTS** the Motions [**Docs. 75, 78, 80**].

I.  **BACKGROUND**

The Court will first discuss the allegations in the Amended Complaint and other pleadings and then turn to the expert witnesses' opinions in this case.

A.  **Factual History**

The lawsuit arises from an insurance coverage dispute filed by Housing Enterprise Insurance Company ("HEIC"). In the Amended Complaint, HEIC alleges that it issued a commercial property insurance policy ("Property Policy") to One South Place, LP ("One South Place") as the sole named insured effective September 20, 2016, to September 20, 2017. [Doc. 49 at ¶ 11]. In addition, HEIC also issued a commercial general liability insurance policy ("CGL

Policy") to One South Place as the sole named insured effective September 20, 2016, to September 20, 2017. [*Id.* at ¶ 12].

On April 12, 2017, an ACORD form Property Loss Notice was submitted to HEIC on behalf of One South Place, which provided notice of a claim under the Property Policy for damage caused by a fire that occurred on April 10, 2017. [*Id.* at ¶ 16]. In addition, HEIC received an ACORD form General Liability Notice of Occurrence/Claim on behalf of One South Place, which provided notice of a claim under the CGL Policy arising from the fire at the property. [*Id.* at ¶ 18]. Following receipt of the notices, HEIC commenced a coverage investigation under the Property Policy and the CGL Policy. [*Id.* at ¶ 19].

The Amended Complaint alleges that during HEIC's investigation, it received documentation showing that on September 29, 2016, One South Place sold of all its interest in the property to South Ridge Housing, LLC ("South Ridge"). [*Id.* at ¶ 20]. Prior to receiving such documentation as part of its coverage investigation, HEIC had not been informed and did not have any knowledge of the sale of the property. [*Id.* at ¶ 21]. The Amended Complaint states that upon information and belief, after September 29, 2016, One South Place no longer maintained any interest, whether legal, financial, equitable, or otherwise, in the Property. [*Id.* at ¶ 22]. HEIC states that after the sale of the property, One South Place no longer had an insurable interest in the property, and as a result, the Property Policy and the CGL Policy were void as of September 30, 2016. [*Id.* at ¶¶ 25, 30]. HEIC informed One South Place by letter dated May 24, 2017, that the Property Policy and the CGL Policy were void for lack of insurable interest as of September 30, 2016. [*Id.* at ¶¶ 32-33]. HEIC also enclosed with the letter a check payable to One South Place in

3

the amount of $18,663.45, representing a pro rata return of the premium for the Property Policy and CGL Policy, calculated from September 30, 2016. [*Id.* at ¶ 34].

HEIC requests a declaratory judgment that it has no obligation to make any payments under the Property Policy or the CGL Policy. HEIC alleges that South Ridge is the current owner of the property but that it is not an insured or loss payee under the Property Policy or the CGL Policy. [*Id.* at ¶ 41]. HEIC states that Emerald Housing Management, LLC, ("Emerald") acted as the property manager, but it is also not an insured or loss payee under the Property Policy or the CGL Policy. [*Id.* at ¶¶ 42-43, 56]. Further, HEIC avers that Berkadia Commercial Mortgage, LLC ("Berkadia") made a loan to One South Place, which was secured by the property, but Berkadia is not an insured or loss payee under the Property Policy. [*Id.* at ¶¶ 44, 46].

South Ridge, the owner of the property, claims that HEIC breached the Property Policy by denying insurance coverage for the fire and loss damages that were incurred. [Doc. 50]. Further, Emerald and One South Place filed a Third-Party Complaint against Wells Fargo Insurance Services USA, Inc., ("Wells Fargo"), alleging as follows: Emerald purchased the Property Policy and CGL Policy through Wells Fargo, Wells Fargo is HEIC's agent, and Wells Fargo breached the duty of care to Emerald. [Doc. 20].

Relevant to the instant Motions, Emerald and One South Place retained Robert Underdown as an expert in this case, which Wells Fargo and HEIC have both challenged. In addition, Wells Fargo retained Billy Akin as an expert in this case, which Emerald and One South Place have challenged. The Court will now turn to the testimony of each challenged expert witness.

B.  **Opinion of Robert Underdown**

According to his Preliminary Expert Report, Robert Underdown ("Underdown") has been in the insurance industry for over thirty years. [Doc. 79-1 at 2]. He states that for twenty years, he was a corporate risk manager responsible for purchasing insurance for a number of public and private corporations. [*Id.*]. He is currently licensed in Arizona as an insurance producer. [*Id.*].

Underdown opines that Wells Fargo had a special relationship with Emerald, and therefore, owed a higher duty to Emerald than the average insurance agent. [*Id.* at 11]. Underdown states that it is apparent that Wells Fargo, in its day-to-day communications with Emerald, was aware that there was a transfer of physical assets of the subject property and that part of the payment of the insurance premiums was from the new owner's escrow. [*Id.*]. Underdown submits that Wells Fargo and HEIC both had notice of the sale because an email referencing "Assumption Insurance requirements" was sent from a Berkadia employee to an Emerald employee, which was then forwarded to Wells Fargo. [*Id.*]. Further, Underdown opines that in Tennessee, under certain circumstances, an insurance carrier can be found vicariously liable for an agent's breach of duty to its client. [*Id.*]. Underdown continues that there was no change in exposure to the insurance carrier because the same property manager, Emerald, continued in its position after the sale. [*Id.*]. He explains that there was simply a change in ownership and that the policy should have been amended by Wells Fargo and HEIC as an industry custom. [*Id.* at 8].

Further, Underdown opines that despite HEIC's claim that it was required to underwrite a new owner of the HUD-managed property, HEIC was not required to perform additional underwriting because the purchaser was already well known by HUD. [*Id.* at 12]. Underdown states that under ordinary circumstances, without the fire claim, HEIC would not have raised any

5

issue with respect to amending the existing policy to reflect the change in the ownership of the property. [*Id.* at 12]. Underdown opines that HEIC was having financial problems and used the loss as an opportunity to improve its financial position to the detriment of the parties involved. [*Id.*]. He concludes as follows:

> It is my opinion that the sale and transfer of ownership of the property from One South Place LP to South Ridge Housing, LLC did not materially increase the hazard of risk on the property. The sole member of South Ridge Housing, LLC is Hoosier Housing Group, LLC. South Ridge Housing, LLC owner, via the Hoosier Housing Group, is a larger entity than One South Place and therefore South Ridge Housing, LLC and the Hoosier Housing Group would be a better ownership group for that property from a risk standpoint and was already accepted as a participant in the HUD system. In addition, in this case, the property manager Emerald Housing Management and the mortgage company Berkadia Commercial Mortgage both remained in place after the transfer of ownership.
>
> In my opinion, it is clear that it was the intent of Wells Fargo and Emerald to transfer the insurance policy ownership to South Ridge Housing, LLC and that the property be covered against the loss that is at issue here based upon the fact that the property was included in the policy, the premiums were paid, and the overall facts related to this case.
>
> As a result, based on the above, it is my opinion that Wells Fargo fell below the standard of care for insurance agents, in many ways. One indicator being the failure of Wells Fargo to comply with the enhanced standard of care based on the factors as outlined above. In this case, Wells Fargo rushed Emerald into the renewal with a very short time window. Another was that Wells Fargo failed to provide guidance to Emerald in the processing of the paperwork for the sale and third, the fact that Wells Fargo failed to take action on the documentation about the sale that was received by Wells Fargo.
>
> It is further my opinion that Wells Fargo failed to comply with even a basic standard of care as evidenced by some of the mistakes it made. For example, Wells Fargo included the wrong

> mortgage company when it issued the 2016 policies and, next, the certificates Wells Fargo issued were inconsistent with the policy.
>
> Therefore, it is my opinion that Wells Fargo failed to adhere to the applicable basic standard of care and also for the enhanced standard of care based on "special circumstances ". As a result, both Wells Fargo and HEIC fell below the standard of care expected of insurance agents and insurance companies.

[*Id.* at 12-13].

### C. Opinion of Billy Akin

As mentioned above, Billy Akin ("Akin") was retained as an expert by Wells Fargo. In his expert report, Akin explains that he was requested to examine certain documents in regard to this case and express his professional opinion as to whether personnel of Wells Fargo met an acceptable standard of care and followed acceptable custom and practice of the insurance industry while dealing with all the parties involved in this litigation. [Doc. 80-1 at 3]. Akin opines that Wells Fargo met the acceptable standard of care and followed acceptable custom and practice of the insurance industry while dealing with all of the parties involved. [*Id.* at 6].

In support of his opinion, Akin states that Wells Fargo was not notified of the needed name changes in the policies within a reasonable time before or during the policies' renewal period and/or near the time of the sale of the property. [*Id.*]. Further, he states that there is no record of Wells Fargo receiving any information requesting a named insured change under the policies at or near the 2016 renewal effective date. [*Id.*]. He submits that the correspondence produced in this case is irrelevant to the situation and that much of the correspondence regarding the renewal of the polices in September 20, 2016, were exchanged between Wells Fargo and other entities. [*Id.*]. Akin emphasizes in his report that there was correspondence between Wells Fargo and various

parties after the renewal of the policies and after the property sale, but no one mentioned to Wells Fargo that the named insured needed to be changed. [*Id.*]. Finally, Akin disagrees with Underdown's opinion expressed in the Preliminary Expert Report as it relates to Wells Fargo. [*Id.* at 9].

## II. POSITIONS OF THE PARTIES

The Court will address the Motions in the order in which they were filed.

### A. HEIC's Motion to Exclude Robert Underdown

HEIC has challenged [Doc. 75] the following six opinions by Underdown: (1) In Tennessee, under certain circumstances, an insurance carrier can be found vicariously liable for an agent's breach of duty to a client, (2) none of the conditions set forth in Tennessee Code Annotated § 56-7-1803 were present or applicable, (3) the risk or exposure did not change because Emerald remained the property manager, and it is industry custom to amend the policy when there is a change of ownership, (4) HEIC was not required to underwrite a new owner because the purchaser was already vetted and approved by HUD, (5) HEIC and Wells Fargo were on notice that the property had been transferred to a new owner, and (6) under ordinary circumstances, without the fire claim, HEIC would have amended the existing policy, and HEIC was having financial problems, so it used this loss as an opportunity to improve its financial position to the detriment of the new property owner.

HEIC asserts that such opinions are inadmissible under Federal Rule of Evidence 702 for three main reasons. First, HEIC argues that Underdown is not qualified to opine on issues of Tennessee law. HEIC explains that Underdown's opinions are legal issues and that he is not an attorney. Further, HEIC contends that opinions on Tennessee law should be precluded as improper

expert evidence and that Underdown also ignored the Subproducer Agreement between Wells Fargo and HEIC's insurance agent that directly contradicts his opinion that Wells Fargo is HEIC's agent.

Second, HEIC asserts that Underdown is not qualified to opine on insurance industry customs and/or underwriting issues. HEIC states that Underdown is not an expert on insurance underwriting, he has never provided an expert opinion on insurance underwriting, and he has no experience in this field. Finally, HEIC argues that Underdown's opinions do not involve scientific, technical, or other specialized knowledge.

In Response [Doc. 86], Emerald and One South Place submit that Underdown has offered three opinions: (1) Wells Fargo was the producer of the insurance policies, (2) HEIC was not entitled to cancel the policy unless one of the conditions set forth in the polices' Tennessee Amendatory Endorsement were met, and (3) that none of the conditions were met. Emerald and One South Place argue that Underdown is qualified to offer his opinions because he has worked in the insurance industry for thirty years and is licensed as a casualty, property, accident/health, and life insurance producer. They assert that Underdown has extensive knowledge and experience with respect to the provisions of commercial property insurance policies.

Further, Emerald and One South Place claim that Underdown's opinions are reliable and will assist the trier of fact. With respect to Underdown's opinion that Wells Fargo was the producer of the insurance policies, Emerald and One South Place assert that this opinion is based on Underdown's knowledge of insurance industry standards, and while consistent with Tennessee law, it is not based on his interpretation of the law. They submit that his opinion is supported by the facts of this case and that it will assist the jury because the subject matter is not within the

9

common knowledge of the average juror. Finally, they argue that Underdown has extensive experience with respect to commercial property policies, which renders his opinions regarding the policies' cancellation provisions reliable. They maintain that Underdown's opinions are based on his specialized knowledge as applied to the facts of this case.

HEIC filed a Reply [Doc. 88], asserting that it challenged six opinions in its Motion and that the Response failed to address several of HEIC's challenges. HEIC states that any opinion that Wells Fargo is the producer is inadmissible because such opinion was not offered in the expert report and that this matter is an issue under Tennessee law. Further, HEIC contends such an opinion is unreliable because Underdown did not provide any evidence that his interpretations are in accord with industry standards, he failed to consider documents, and he did not consider the relevant Tennessee statute. HEIC maintains that Underdown is not qualified to render such an opinion because he has never been a licensed producer in Tennessee. HEIC states that Underdown's experience as an insurance producer was limited to life insurance policies, and he only worked that job for about a year.

Finally, HEIC states that Underdown's opinion that HEIC was not permitted to void the policies under the Tennessee cancellation statute is inadmissible because it is a legal opinion, he is not qualified to render such an opinion, and it is not based on any specialized or technical knowledge.

**B. Wells Fargo's Motion to Exclude Robert Underdown**

Wells Fargo also moves [Doc. 78] to exclude Underdown. First, Wells Fargo asserts that his experience and background do not qualify him to testify about an insurance agent's standard of care in issuing a property policy. Second, Wells Fargo argues that Underdown's testimony rests

upon an unreliable basis and that his conclusory labels about facts are not admissible as expert opinions, and therefore, his opinions cannot substantially assist the trier of fact. Wells Fargo contends that Underdown did not identify any methodology, technique, or explanation and only reviewed the pleadings.

Emerald and One South Place respond [Doc. 85] that Underdown is qualified to render his opinions in this case because he has worked in the insurance industry for over thirty years and is licensed as a casualty, property, accident/health, and life insurance producer. They assert that he is familiar with the insurance industry and the standard of care with respect to insurance producers. Further, Emerald and One South Place argue that Underdown's testimony is both reliable and will assist the trier of fact. They submit that his testimony is consistent with the facts in this case and Tennessee law. Further, they argue that Underdown's testimony is based on his specialized knowledge of industry standards as applied to the facts of this case. Finally, Emerald and One South Place argue that his opinion will assist the trier of fact because the average juror is not familiar with the roles of various parties working within the insurance industry or the standard of care with respect to insurance producers.

### C. Motion to Exclude Billy Akin

Emerald and One South Place move [Doc. 80] to exclude Akin, who was retained by Wells Fargo as an expert witness. Emerald and One South assert that Akin's opinion—that is, Wells Fargo met the acceptable standard of care and followed acceptable custom and practice of the insurance industry—directly contradicts his deposition testimony. They further argue that Underdown is not qualified to testify regarding the standard of care of an insurance producer in

the affordable housing market because his experience is with underwriting and he has no experience with the affordable housing market.

Wells Fargo asserts [Doc. 84] that Emerald and One South Place mischaracterize Akin's opinion. Wells Fargo submits that Emerald and One South Place's arguments go to the weight of Akin's testimony, and not to the admissibility of the testimony. In addition, Wells Fargo states that Akin is qualified and experienced to render his opinions because he has been an insurance consultant for many years and he has worked as an insurance producer. Wells Fargo states that Akin has previously written business for a housing authority.

Emerald and One South Place filed a Reply [Doc. 87], asserting that Akin's opinion is unreliable because he did not take into account the multiple admitted failures of Wells Fargo. They maintain that this demonstrates that the methodology upon which Akin relies on is unreliable.

### III. STANDARD OF REVIEW

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 589 (1993)). Specifically, Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;

12

> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. The *Daubert* standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony, include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970-71 (M.D. Tenn. 2002) (citing *Daubert*, 509 U.S. at 593–94). Rule 702 inquiry as "a flexible one," and the *Daubert* factors do not constitute a definitive checklist or test. *Kumho Tire Co.*, 526 U.S. at 138-39 (citing *Daubert*, 509 U.S. at 593); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) (explaining that these factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted").

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cty., Tenn.*, No. 3:08-CV-25,

2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138-39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70-71 (quoting *Daubert*, 509 U.S. at 593-94). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n. 10.

"Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the methodology used." *In re Diet Drugs*, No. MDL 1203, 2001 WL 454586, at *7 (E.D. Pa. Feb. 1, 2001) (citing *Heller*, 167 F.3d at 153). A court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." *In re Diet Drugs*, 2001 WL 454586, at *7 (quoting 4 Weinstein's Fed. Evid. § 702.06[1], at 702–52 (2000)). This simply means that "a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue." *Id.* (other citations omitted).

## IV. ANALYSIS

Guided by the foregoing, the Court will now turn to the parties' Motions. The Court will first address the challenges to Underdown's opinion and then turn to the objections with respect to Akin's opinion.

### A. Robert Underdown

HEIC and Wells Fargo have both challenged Underdown's qualifications to render his

14

opinions in this case. Several of their challenges are addressed further below.[1] HEIC also argues that Underdown cannot opine that as a matter of industry custom, HEIC should have amended the policy and that the change in ownership did not increase the risk so that no additional underwriting was necessary. HEIC emphasizes that Underdown has no experience in underwriting and that he acknowledged during his deposition that he does not consider himself to be an expert in underwriting. Emerald and One South emphasize that Underdown has thirty years of experience in the insurance industry and that he has been employed in ten different positions within the industry, such as working as an insurance producer and risk manager.

The Court finds that Emerald and One South have not established Underdown's qualifications to render him an expert as to underwriting. Specifically, they point to his experience in the insurance industry as an insurance producer and risk manager, but they do not explain how such experience qualifies Underdown to opine on matters relating to underwriting. *See Berry v. Crown Equip. Corp.*, 108 F. Supp. 2d 743, 749 (E.D. Mich. 2000) (explaining that the "trial court must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony") (citing *Smelser v. Norfolk Southern Ry. Co.,* 105 F.3d 299, 303 (6th Cir. 1997)). Further, in his deposition, Underdown acknowledged that he did not have any insurance underwriting experience from the insurer side, the only underwriting training he had was in the various courses he took in general insurance, and that he has never provided an expert opinion on insurance underwriting. [Doc. 79-1 at 147-48]. He testified that he does not consider himself an

---

[1] For instance, HEIC and Wells Fargo assert that Underdown cannot render legal opinions because he is not an attorney and such opinions are not helpful to the jury. The Court will address these arguments below.

expert on insurance underwriting. [*Id.* at 148]. Later in his deposition, he testified that he did not have any direct experience in underwriting. [*Id.* at 228]. Accordingly, the Court finds HEIC's argument well taken.

HEIC and Wells Fargo also argue that Underdown's opinions constitute improper legal conclusions and do not substantially assist the jury. The Court agrees. Specifically, Rule 704(a) provides, "An opinion is not objectionable just because it embraces and ultimate issue." Fed. R. Evid. 704(a); *see also Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014). It is well established, however, that the Rules do not allow experts to make legal conclusions. *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016). An expert makes a legal conclusion when he/she "defines the governing legal standard or applies the standard to the facts of the case." *Id.* Courts have reasoned that expert testimony that "attempts to tell the jury what result to reach and which runs the risk of interfering with a district court's jury instructions, hardly can be viewed as being helpful to the jury." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) (citing Fed. R. Evid. 702).

The Court has reviewed Underdown's report and agrees with HEIC and Wells Fargo that the report contains a number of improper legal conclusions. For instance, Underdown opines that Wells Fargo had a special relationship with Emerald and that it owed Emerald a higher duty than the average insurance agent. Other courts have found similar opinions inadmissible. *See Paul Revere Life Ins. Co. v. Wilner*, 230 F.3d 1359, 2000 WL 1290365, at *4 (6th Cir. 2000) (precluding expert from testifying that a "special relationship" existed between an agent and the insured because this opinion was a legal conclusion); *Superior Aluminum Alloys, LLC v. U.S. Fire Ins. Co.*, No. 1:05-CV-207, 2007 WL 4618463, at *9 (N.D. Ind. June 25, 2007) ("Accordingly, whether

Sky and OmniSource enjoyed a 'special relationship' that imposed upon Sky an enhanced duty to advise is a matter for the Court, and not [an expert], to decide; therefore, [the expert's] opinion on the matter is inadmissible.").

Further, in his Preliminary Expert Report, Underdown discusses Tennessee law, citing *Cleveland Custom v. Acuity Mut. Ins. Co.*, No. E2013–02132–COA–R3–CV, 2014 WL 2586374 (Tenn. Ct. App. 2014) and Tennessee Code Annotated § 56-6-115, to conclude that none of the proscribed conditions set forth in the statute, under which an insurer may cancel a policy, were present or applicable. He further discusses that in Tennessee under certain circumstances, an insurance carrier can be found vicariously liable for an agent's breach of duty. He opines on Wells Fargo's and HEIC's intent with respect to transferring the property and concludes that both their conduct fell below the standard of care. The Court finds that such opinions simply instruct the jury on what verdict to reach, rendering his opinions inadmissible. *See Louisville Marketing, Inc. v. Jewelry Candles, LLC*, No. 3:15-cv-84, 2016 WL 6595094, *5 (W.D. Ky. Nov. 4, 2016) (excluding an opinion when the expert witness's determination "supplies the jury with no information other than the witness's view of how the verdict should read"); *see also In re Commercial Money Ctr., Inc.*, 737 F. Supp. 2d 815, 829–30 (N.D. Ohio 2010) (explaining that testimony as to the breach of duty encompasses legal conclusions and finding expert opinions regarding a breach of the applicable standards impermissible).

Further, the Court finds Underdown's remaining opinions are not helpful to the jury because they do not involve any specialized knowledge. Specifically, Underdown reviews Wells Fargo's advertisements to conclude that it held itself out as having greater than average expertise in the insurance of rental properties. In addition, he opines that in a magazine, Wells Fargo

announced its plan to sell its commercial insurance business and that the transition of ownership and possible personnel changes may have contributed to Wells Fargo's oversight with respect to the change of ownership of the subject property. He also reviews certain communications to opine that HEIC and Wells Fargo had notice of the sale. Underdown further opines that there was no increased risk because the purchaser had already been approved by HUD and Emerald remained the property manager. The Court finds that the jury is capable of reviewing such evidence and forming their own opinions. *United States v. Freeman,* 730 F.3d 590, 597 (6th Cir. 2013) ("A witness, lay or expert, may not form conclusions for a jury that they are competent to reach on their own."); *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1272 (6th Cir. 1988) ("[The witness's] proffered testimony . . . consisted of opinions which were not helpful to the jury because they addressed matters that were equally within the competence of the jurors to understand and decide, and thus were inadmissible under [Rules 701 and 702].").

Finally, the Court finds Underdown's opinion that HEIC was having financial problems and used this loss as an opportunity to improve its financial position to the detriment of the property owner mere speculation. He bases his opinion on an email and two other documents that discussed not writing additional business. [Doc. 79-2 at 243-45]. The jury, however, is capable of reviewing such evidence and determining whether HEIC denied coverage based on a financial motive. Accordingly, for the above reasons, the Court finds Underdown's opinions not admissible in this case.

### B. Billy Akin

As noted above, Wells Fargo retained Akin as an expert in this case. At the hearing in this matter, Wells Fargo acknowledged that this case is not appropriate for expert testimony and that it retained Akin simply because Emerald and One South retained Underdown.

In the present matter, Akin opines that Wells Fargo met an acceptable standard of care and followed acceptable custom and practice of the insurance industry while dealing with the other parties involved. In addition, he states that he disagrees with Underdown's opinion. Similar to Underdown's opinion, Akin does not provide a description of the acceptable customs and practices but simply concludes that Wells Fargo met them, along with the acceptable standard of care. The Court finds Akin's opinion is also an impermissible legal conclusion, and the Court hereby excludes his opinion for the same reasons explained above.

### V. CONCLUSION

Accordingly, for the reasons stated above, the Court finds Housing Enterprise Insurance Company's Motion to Exclude Robert Underdown [**Doc. 75**], Wells Fargo's Motion to Exclude Robert Underdown [**Doc. 78**], and Emerald Housing Management, LLC, and One South Place, LP's Motion in Limine to Exclude Billy Akin [**Doc. 80**] are **GRANTED**.

**IT IS SO ORDERED.**

ENTER:

_____
United States Magistrate Judge